

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DENISE A. SAFRANEK | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 05 C 1015 |
| v. | ) |
| | ) HONORABLE DAVID H. COAR |
| COPART, INC., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Before this Court is a motion to compel arbitration and dismiss, or, in the alternative, to stay Plaintiff Denise Safranek's complaint, filed by Defendant Copart, Inc. For the reasons stated below, the portion of the arbitration provision at issue that prohibits the awarding of attorney's fees to a successful Title VII plaintiff is severed from the rest of the agreement and rendered unenforceable. The remainder of the arbitration provision is enforceable. The parties are ordered to arbitrate Plaintiff's Title VII claim. This case is DISMISSED.

### Standard of Review

When deciding a motion to dismiss, the court must assume all facts alleged in the complaint to be true, construe the allegations liberally and view the allegations in the light most favorable to the plaintiff. *Wilson v. Formigoni*, 42 F.3d 1060, 1062 (7th Cir.1994). Because a motion to compel arbitration is essentially a claim that the court lacks subject matter jurisdiction, it is proper for the court to consider matters beyond the allegations in the complaint. *Capitol Leasing Co. v. Federal Deposit Insurance Corp.*, 999 F.2d 188, 191 (7th Cir.1993). A litigant

may use affidavits and other material to support a motion to dismiss for lack of subject matter jurisdiction. *United Phosphorus, Ltd. v. Angus Chemical Co.* 322 F.3d 942, 946 (7th Cir. 2003).

## Background

Plaintiff Denise Safranek ("Plaintiff") is a former employee of Defendant Copart, Inc. ("Defendant"), a company that provides automobile towing and salvage to major automobile insurers in the United States.

Plaintiff began her employment with Defendant on December 6, 1996. After she had been employed for about two years, she was presented with an employee handbook and a form titled "Receipt of this Employee Handbook." Plaintiff was required to sign and return the receipt, which laid out various details regarding employment. Relevant to this case, the receipt required Plaintiff to agree "that any dispute or controversy arising out of, relating to, or concerning any interpretation, construction, performance, or breach of the terms of [her] employment" would be settled by arbitration. It also required Plaintiff to agree to cede any claims to attorney's fees and expenses, regardless of the subject matter or outcome of the arbitration.

After Plaintiff signed the receipt, her troubles began. Her complaint alleges, inter alia, that her manager requested to see and photograph her breasts and that he tried to fondle them. He caused Plaintiff to be paid less than a lower-ranked employee with whom he was having a sexual relationship. He reprimanded Plaintiff for removing derogatory sexual graffiti about her and other female employees from a restroom. And after Plaintiff rebuffed his sexual advances, he threatened to terminate her. On February 13, 2004, he placed her on suspension, pending her termination. On February 18, 2004, Plaintiff was terminated.

Plaintiff contends that her firing, and other adverse actions taken by Defendant against her, were motivated by her sex and constitute sex discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, et. seq. and the Civil Rights Act of 1991, 42 U.S.C. §1981a. She filed charges with the Equal Employment Opportunity Commission and filed this complaint within ninety days of receiving a Notice of Right to Sue from the EEOC.

Plaintiff filed her one-count complaint, based on claims of sex discrimination, in this Court on February 18, 2005. Defendant filed its motion to compel arbitration and dismiss, or, in the alternative, to stay Plaintiff's complaint, on April 18, 2005. This motion has been fully briefed.

## Discussion

Defendant requests that this Court compel arbitration. Defendant contends that federal jurisdiction is improper because Plaintiff, by agreeing to be bound by the terms of the employee handbook, agreed to arbitrate claims such as the one she currently brings before this Court.

Plaintiff's first response to Defendant's motion is that the arbitration provision is invalid because it requires her "to make many promises without any promise in return" from Defendant. Plaintiff's argument is without merit. The fact that an employer has agreed to be bound by the outcome of the arbitration is enough, in the Seventh Circuit, to defeat allegations that the agreement in question is invalid due to a lack of consideration. *See Michalski v. Circuit City Stores, Inc.*, 177 F.3d 634, 635 (7th Cir. 1999) (finding the "promise to be bound by the arbitration process itself serves as mutual consideration here."). In this case, the arbitration provision of the receipt states that "the decision of the arbitrator shall be final, conclusive and

binding on the parties." The receipt, insofar as requires arbitration on certain issues, imposes obligations on both parties. Consequently, the arbitration provision is not invalid for lack of mutuality.

Plaintiff next argues that the agreement is unenforceable because it is unclear whether Title VII claims can ever be arbitrated. Again, Plaintiff is incorrect. Federal statutory claims may be appropriate for arbitration as long as the litigant can effectively vindicate her statutory cause of action in the arbitral forum, such that the statute will continue to serve its remedial and deterrent purposes. *See, e.g., Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28 (1991). In *Gilmer*, for example, the Court reviewed the extensive arbitration procedures to be used by parties, determined that the rules pertaining to that particular arbitration did not restrict the type of relief the arbitrator could have awarded, and then concluded that the statutory scheme at issue was not undermined by arbitration. *See id.* at 32.

In line with the reasoning in *Gilmer*, only those agreements that do not undermine the statutory scheme are enforceable: this conclusion is not surprising, given that "[b]y agreeing to arbitrate a statutory claim, a party does not forego the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than judicial, forum." *Mitsubishi Motor Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985).

The Seventh Circuit has determined that it is possible for a litigant to vindicate his Title VII cause of action in an arbitral forum. *See Koveleskie v. SBC Capital Markets, Inc.*, 167 F.3d 361, 364 (7th Cir. 1999). The instant case, however, poses a slightly different question: can an employer, as a condition of employment, require an individual employee arbitrating civil rights

claims brought under Title VII to cede the attorney's fees that she would likely receive if she prevailed in federal court?

Plaintiff's final contention is that the agreement is unenforceable because she is required, by its plain text, to bear her own costs with respect to attorney's fees. The arbitration provision in this case provides that "each of us shall separately pay our counsel fees and expenses."

It is the task of this Court, (just as it was the task of the courts in *Gilmer*), to determine whether that denial in the arbitral forum is such that Plaintiff is kept from effectively vindicating her rights under Title VII, such that the remedial and deterrent purposes of the statute are not served.

The grant of attorney's fees is one of the remedies available under Title VII. *See* 42 USC §2000e-5(k); *see also Dunning v. Simmons Airlines, Inc.*, 62 F.3d 863, 873 fn. 13 (7th Cir. 1995)(**"Congress recognized that private-sector fee arrangements were inadequate to ensure sufficiently vigorous enforcement of civil rights. In order to ensure that lawyers would be willing to represent persons with legitimate civil rights grievances, Congress determined that it would necessary to compensate lawyers for all time reasonably expended on a case."**). A review of Title VII indicates that attorney's fees are a critical part of a statutory framework intended to eradicate civil rights violations in this country. "**[A] plaintiff in any civil rights suit acts 'not for himself alone but also as a 'private attorney general,' vindicating a policy that Congress considered of the highest importance.**" *Dunning* at 872 (7th Cir. 1995)(citations omitted).

Title VII was not passed as a means of eradicating only the most startling civil rights violations. Indeed, the attorney's fees provision in Title VII indicates the importance of stamping

out all types of civil rights violations, including those that might otherwise not be vindicated because the relatively small amount of potential damages. *See id.* at 873, fn. 13. In line with such reasoning, a prevailing party bringing suit under Title VII will almost always recover attorney's fees, absent a showing that an award of fees would be unjust. *See id.* at 872, *see also* 42 U.S.C. §2000e-5(k).

The question of whether an arbitration agreement can be enforced–when it specifically prohibits the award of attorney's fees in a Title VII case–is an open question in the Seventh Circuit, as Defendant correctly notes. In light of the history and goals of statute, this Court determines that the provision prohibiting the grant of attorney's fees conflicts with Title VII. With such a bar in place, a plaintiff cannot effectively vindicate her rights in an arbitral forum: the preemptive denial of attorney's fees keeps the statute from serving its remedial and deterrent purposes. *See McCaskill v. SCI Management Corp., SCI*, 298 F.3d 677, 685 (7th Cir. 2001) (Rovner, J., concurring)(noting that "[t]he right to attorney's fees is 'integral to the purposes of the statute and is often central in the ability of persons to seek redress from violations of Title VII" and concluding that bar to attorney's fees kept plaintiff from effectively vindicating her rights in the arbitral forum by preemptively denying her remedies authorized by Title VII.); *Spinetti v. Service Corp. Int'l.*, 324 F.3d 212, 216 (3rd Cir. 2003)("The district court properly determined that the proviso requiring each party to pay its own attorney's fees -- regardless of the outcome of the arbitration -- runs counter to statutory provisions under Title VII and ADEA that permit an award of attorney's fees and costs to a prevailing party."); *Morrison v. Circuit City Stores, Inc., 317 F.3d 646, 673, fn. 15* (6th Cir. 2003)("If arbitration is to offer claimants the full scope of remedies available under Title VII, arbitrators in Title VII cases, just like courts...must

ordinarily grant attorney fees to prevailing claimants."); *Graham Oil Co. v. ARCO Products, Co., a Div. Of Atlantic Richfield Co.*, 43 F.3d 1244 (9th Cir. 1994)(attorney's fees clause found to forfeit statutorily-mandated rights and benefits that Congress intended franchisees to arbitral disputes to possess); *cf. Hadnot v. Bay, Ltd.*, 344 F.3d 474 (5th Cir. 2003)(citation omitted)("As the district court correctly noted, the Agreement's ban on punitive and exemplary damages is unenforceable in a Title VII case. The Supreme Court has held: "By agreeing to arbitrate a statutory claim, a party does not forego the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than judicial, forum.").

There is a collection of stray statements in Seventh Circuit case law–most of them dicta–that can be read to indicate that a plaintiff can be required to waive any substantive civil rights as a condition of employment. In *Metro East Ctr. for Conditioning and Health v. Qwest Communications, Intl., Inc.*, 294 F.3d 924 (7th Cir. 2002) and later in *Carbajal v. H & R Block Tax Serv., Inc.*, 372 F.3d 903 (7th Cir. 2004), panels of the Seventh Circuit analyzed arbitration clauses that waived substantive and procedural rights under other statutes in a manner that suggests that Plaintiff in this case should be required to forego attorney's fees even if she prevails in the arbitration of her Title VII claim.

In *Metro East*, the Seventh Circuit panel observed that "[o]ne aspect of personal liberty is the entitlement to exchange statutory rights for something valued more highly. Instead of offering a benefit only to a person who is required to arbitrate or litigate, a fee shifting statute may provide a benefit more widely to the extent that it changes the terms of the trade..." 294 F.3d at 929. The *Metro East* panel hypothesized that the plaintiff-customer exchanged the right to fees for lower rates. It does not appear, from the opinion, that this conclusion was based upon

evidence presented in the case. Moreover, even if the evidence in that particular case supported that assumption, there is no such evidence in this case.

It is certainly true that in an efficient marketplace, competition will assure that savings are passed along to the public in the form of lower prices. It is also true, however, that not all markets are efficient. In an inefficient market, savings realized by not requiring the payment of the fees of a prevailing plaintiff might not inure to the benefit of the public (through lower prices) or the employee (through higher wages). Congress has determined that payment of attorney's fees is an important element in the vindication of public and private rights in Title VII cases. While there may be circumstances in which this element could be "traded" for comparable benefits derived from the use of an arbitral process in which fees are not available, we should not be too quick to *assume* comparability on the basis of a hypothetical bargain.

The examples of waiver in *Metro East* can be distinguished from a waiver that would occur in this case. For the most part, they deal with situations where the courts determine that the waiver of the right is knowing and voluntary; such a standard is not in place when reviewing arbitration agreements.[1] In criminal situations, defendants have the added procedural protection of Federal Rule of Criminal Procedure 11. With respect to *Evans v. Jeff D.*, 475 U.S. 717 (1986), "the Court explicitly distinguished the case before it from one involving the policy of demanding a fee waiver." *McCaskill*, 298 F.3d at 686 (Rovner, J., concurring) (citation omitted). The most apposite example in *Metro East–Newton v. Rumery*, 480 U.S. 386 (1987), where the plaintiff

---

[1] *See Penn v. Ryan's Family Steak Houses, Inc.*, 269 F.3d 753, 761 (7th Cir. 2001)("Given this holding, we need not decide whether this circuit should adopt the Ninth Circuit's "knowing and voluntary waiver" standard for evaluating the enforceability of arbitration agreements in the employment context, although we question the continued validity of such an approach...").

waived an entire civil rights claim--is different from this case in that in *Newton*, the public interest was served by allowing the criminal defendant to waive his civil rights claim. *See Newton v. Rumery*, 480 U.S. 386 (1987). The *Rumery* court noted that the public benefitted from the defendant's waiver because it meant that fewer public resources would have to be expended by the government. In this case, no such resources are at stake.

Moreover, to the extent that the panels in *Metro East* and *Carbajal* suggest that the prospective waiver of statutory rights is valid, there are suggestions of a different approach in other opinions. For example, some courts have indicated that the prospective waiver of statutory rights raises public policy concerns. In *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 631 n. 19 (1985), for example, the Supreme Court noted that "in the event the choice-of-forum and choice-of-law clauses operated in tandem as a prospective waiver of a party's right to pursue statutory remedies for antitrust violations, we would have little hesitation in condemning the agreement as against public policy." In *Cange v. Stotler and Company*, 826 F.2d 581, 595 (7th Cir. 1987), the majority stated that "[t]he waiver of substantive statutory rights after the violation has occurred is akin to a settlement of the dispute, but prospective waivers of statutory rights tend to encourage violations of the law by notifying the wrongdoer in advance that he or she can act with impunity; therefore prospective waivers uniquely can violate public policy."[2] The *Cange* majority also stated that "we cannot agree...that substantive provisions under the Act are merely 'bargaining chips' to be 'traded away' in form contracts." *Id.*

---

[2] The *Metro East* panel, in comparison, does not find the temporal distinction "necessarily dispositive." 294 F.3d at 929.

In the Title VII context, the idea that employers can require employees to sign mandatory arbitration agreements ceding attorney's fees as a condition of employment–and that this is possible because the employees are getting the benefit of employment in exchange–is analytically flawed. Any employer who requires employees to waive their rights to attorney's fees gains an economic advantage over employers who do not make such a demand. Consequently, other employers will be driven (by economic considerations) to make such demands, resulting in the evisceration of that feature of employment law that Congress has deemed to be important.

Defendant argues that even if the bar to attorney's fees conflicts with Title VII, it is the arbitrator rather than a court who should make that determination. In support, Defendant cites *Carbajal*, 372 F.3d at 906 (7th Cir. 2004).[3] In *Carbajal*, however, the Seventh Circuit decided that the arbitrator was in the best position to determine whether the attorney's fees provision conflicted with federal law only after noting that the parties in their agreement specifically decided to give the arbitrator the authority to determine enforceability issues. *See id.* at 905 (citations omitted) (noting that the agreement "covers any dispute about the 'validity or enforceability of this arbitration provision or any party thereof'–a clause evidently tailored to come within the rule that people may agree to arbitrate whether a given dispute is arbitrable."). There is no similar language in the text of the agreement in this case that the parties agreed to arbitrate the question of enforceability. Indeed, this particular agreement does not state that the

---

[3] Defendant also cites two cases from other circuits to support the proposition that an arbitrator should determine whether Plaintiff is entitled to attorney's fees. *See Musnick v. King Motor Co.*, 325 F.3d 1255 (11th Cir. 2003); *Thompson v. Irwin Home Equity Corp.*, 300 F.3d 88, 92 (1st Cir. 2002). These Truth in Lending Act cases are different from the current Title VII case, where Plaintiff's attorney cannot get attorney's fees under any circumstances: in both cases that Defendant cites, the prevailing party was eligible for attorney's fees. Moreover, insofar as those cases are similar to this case, this Court finds them unpersuasive.

arbitrator has discretion to determine what, if any, attorney's fees shall be awarded. The last sentence of the arbitration clause, a sentence that is included after language explaining that how the arbitrator's judgement is entered, clearly and unequivocally states that each party is to bear its own costs.[4]

The Carbajal court also notes that the arbitrator determines the validity of ancillary provisions. In support, it cites *PacifiCare Health Systems, Inc. v. Book*, 538 U.S. 401 (2003), *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444 (2003), and *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002). All three cases, however, deal with situations that differ from that in this case where the plain text of the agreement requires Plaintiff to forego claims to attorney's fees. In *PacifiCare*, the Supreme Court stated: "In short, since we do not know how the arbitrator will construe the remedial limitations, the questions whether they render the parties' agreements unenforceable and whether it is for courts or arbitrators to decide enforceability in the first instance are unusually abstract...the proper course is to compel arbitration." *Pacificare*, 538 U.S. at 406-407. In *Bazzle*, the Court determined that "the dispute about what the arbitration contract in each case means" was a dispute best decided by the arbitrator. *Bazzle*, 539 U.S. at 451. As for *Howsam*, the Court found that the applicability of a NASD time limit rule seemed to be an aspect of the controversy which called grievance procedures into play and which NASD arbitrators, comparatively more expert in the meaning of their own rules, were comparatively better able to interpret and apply. *See Howsam*, 537 U.S. at 85-86. The agreement in this case is

---

[4] The parties do not contend that any other specific language in the arbitration agreement supports the proposition that the parties intended for the arbitrator to be able to grant attorney's fees or the proposition that the arbitrator was to determine the enforceability of the attorney's fees provision.

not ambiguous–it clearly states that each side is to pay its own attorney's fees and does not grant the arbitrator discretion to award attorney's fees in line with Title VII precedent. There is no dispute as to what the contract means–neither side in this case has raised an issue as to a potential ambiguity; in fact, both agree that attorney's fees are prohibited under the terms of the contract. Finally, the bar to attorney's fees does not call specific grievance procedures into play nor does its interpretation require the special expertise of an arbitrator.

Moreover, the Supreme Court in *Greentree Financial-Alabama v. Randolph*, 531 U.S. 79 (2000), determined that Plaintiff did not meet her burden of showing that arbitration costs were prohibitive such that she would not be able to vindicate her statutory because she failed to present sufficient evidence to *the courts* that were charged with determining the arbitrability of the agreement. *Greentree* suggests that a party resisting arbitration on the ground that it prevents him from vindicating his statutory rights is entitled to a judicial forum on that issue.[5]

Requiring parties to arbitrate the issue of the enforceability of an agreement denying attorney's fees under Title VII, in light of an absence of any agreement to arbitrate the issue, is particularly problematic given the legislative history and legislative aims of the federal statute. Title VII's attorney's fees provision is valuable not only because it permits the grant of the actual fees, but also because it promotes the understanding among the legal community that those fees, barring some rare exceptions, will be available to plaintiffs who prevail in their Title VII claims.

---

[5] Any claim that Plaintiff raises regarding the cost-splitting provision of the clause is without merit, given that she has not satisfied the *Randolph* requirement of showing that the costs would be prohibitive. *See Randolph*, 531 U.S. 79 (2000). (It is important to note that arbitration costs are a distinct conceptual category from attorney's fees. The longstanding grant of attorney's fees awards in the Title VII context, coupled with the legislative history related to those awards, makes clear that in most cases the denial of attorney's fees to the prevailing plaintiff is denial of a remedy).

Forcing employees to arbitrate the issue of attorney's fees chips away at the sense of financial security that Congress sought to provide attorneys who represented meritorious Title VII plaintiffs. That, in turn, effectively keeps plaintiffs from vindicating their rights under the federal statute and does not serve the remedial and deterrent purposes of the statute.

Given the strong federal policy favoring arbitration, and the ability of the courts to sever unenforceable provisions of otherwise valid agreements, the best course in this case is to sever the portion of the arbitration clause stating that each party shall bear its own costs with respect to attorney's fees. Under Illinois law, a court may, in its discretion, "modify a contract so that it comports with the law or sever unenforceable provisions from a contract." *Abbott-Interfast Corp. v. Harkabus*, 250 Ill.App.3d 13, 189 Ill.Dec. 288, 619 N.E.2d 1337, 1343-44 (1993). The bar to attorney's fees does not go to the "essence" of the agreement between the parties and therefore can be severed. *See People ex rel. Foreman v. Vill. of Round Lake Park*, 171 Ill.App.3d 443, 121 Ill.Dec. 561, 525 N.E.2d 868, 875 (1988) This court severs the portion of the receipt requiring each party to bear its own attorney's fees and costs–and that portion only–from the arbitration clause.

## Conclusion

For the foregoing reasons, the portion of the arbitration provision at issue that prohibits the awarding of attorney's fees to a successful Title VII plaintiff is severed from the rest of the agreement and rendered unenforceable. The remainder of the arbitration provision is enforceable. The parties are ordered to arbitrate Plaintiff's Title VII claim. This case is DISMISSED.

Enter:

David H. Coar
United States District Judge

Dated: July 14, 2005